FILED

Aug 02 2016, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

R. Patrick Magrath
Laura Raiman
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William A. Connor, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 2, 2016 <br><br> Court of Appeals Case No. <br> 03A05-1511-CR-1893 <br><br> Appeal from the Bartholomew <br> Superior Court <br><br> The Honorable James D. Worton, <br> Judge <br><br> Trial Court Cause Nos. <br> 03D01-1502-FB-1033 <br> 03D01-1504-F3-1937 |

**Robb, Judge.**

# Case Summary and Issue

[1] William Connor entered a plea of guilty to criminal deviate conduct as a Class B felony, in exchange for which the State dismissed a charge in a separate case. The trial court sentenced Connor to fourteen years in the Indiana Department of Correction ("DOC") with four years suspended to probation. Connor appeals his sentence, raising the sole issue of whether it is inappropriate in light of the nature of his offense and his character. Concluding his sentence is not inappropriate, we affirm.

# Facts and Procedural History[1]

[2] Connor was born in 1997 in Russia. At age three, severely malnourished and unable to speak, he was placed in an orphanage. He was adopted by the Connors at age four and raised with the Connors' two biological daughters, M.C. and J.C. Connor has attempted suicide on several occasions and has been involved with mental health services for several years. He has been diagnosed with reactive attachment and bipolar disorders.

[3] On February 23, 2015, sixteen-year-old J.C. reported to law enforcement that Connor, then seventeen years old, had engaged in sexual conduct with her against her will multiple times over the past two years. Connor admitted to the

---

[1] No transcript of the change of plea hearing was provided to this court, and therefore, the facts underlying the offense come primarily from the Affidavit for Probable Cause. The parties' recitation of the facts in their briefs also come from the affidavit.

sexual contact when interviewed by police. On February 27, 2015, the State charged Connor with criminal deviate conduct, a Class B felony ("Cause 1033").[2] A jury trial was scheduled for July 28, 2015.

[4] On April 15, 2015, the State charged Connor with rape as a Level 3 felony for acts committed against a second victim ("Cause 1937"). Connor obtained a continuance of his July jury trial date in Cause 1033 and ultimately reached an agreement with the State to plead guilty to criminal deviate conduct in Cause 1033 in exchange for the State dismissing Cause 1937. The trial court held a change of plea hearing in Cause 1033 on September 21, 2015, at which time Connor filed a Waiver of Rights, Withdrawal of Plea of Not Guilty and Plea of Guilty. The trial court accepted the plea of guilty, entered judgment of conviction, ordered a pre-sentence investigation report to be prepared, and scheduled a sentencing hearing.

[5] Connor had one prior contact with the juvenile court system, in late 2014, when he was alleged to have committed two acts of conversion, Class A misdemeanors if committed by an adult, and leaving home without permission. He was remanded to a shelter before being released approximately six weeks later to his parents. He was given a 120-day suspended detention and placed on

---

[2] It appears the State may have actually charged two counts of criminal deviate conduct in Cause 1033. *See, e.g.,* Appellant's Appendix at 1 (Chronological Case Summary); *id.* at 32 (letter from the State offering to "dismiss the remaining counts and [Cause 1937]" in exchange for Connor's plea of guilty to Count I in Cause 1033); *id.* at 55 (Abstract of Judgment). However, there is but one charging information in the record alleging one count of criminal deviate conduct in Cause 1033. *See id.* at 6.

probation with the requirement that he complete a psychological evaluation and follow up as recommended. He was on probation when the current charge was filed. The pre-sentence investigation report noted that Connor's overall risk assessment score indicated he was a low to moderate risk in most areas but a high risk with regard to his criminal attitudes and behavior patterns and was therefore at an overall high risk category to reoffend.

[6] At the sentencing hearing on October 20, 2015, Connor spoke on his own behalf, and both his father and J.C. gave statements. The trial court sentenced Connor to fourteen years in the DOC with four years suspended to probation:

> This is a very difficult case . . . [a]nd it is difficult on everybody involved, but the Court does agree with the State's contention that there is a balancing act to try and accomplish here today in formatting an appropriate sentence. And that is the mental health treatment and, and rehabilitating treatment for the defendant, which is important. And the safety of the victim in this case, which is very important and the safety of the rest of the community. . . . The Court is not insensitive to the, to the fact that you have had some, had some rough times in your life, especially at the beginning of your life . . . but I would like to say that in this Court's mind does not in any way justify the actions that you did. . . . So we start with the advisory term of ten years and then the Court weighs aggravators and mitigators. . . . In this case the Court finds the following aggravators. The defendant does have a history of criminal delinquent behavior. The, yes there is not an extensive criminal history there, but the Court does note that there were more than, though you've plead to one offense there were [sic] more than one offense that occurred. This is something that occurred over a period of time. The Court also finds as an aggravator that the harm, injury or loss or damage suffered by the victim of the offense was

significant and greater than the elements necessary to approve [sic] the commission of the offense. The Court will take the defendant's mental health and find that as a slight mitigator . . . that those issues are present. . . . The Court . . . notes that the Indiana Risk Assessment Tool, shows that the defendant, as it stands today has a high risk to re-offend. So the Court does, doesn't find that as an aggravator, but the Court does note that for the record. The Court considers the balance of aggravating and mitigating factors to be that the aggravators outweigh the mitigators.

Transcript at 22-25. Connor now appeals his sentence.

# Discussion and Decision

## I. Standard of Review

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences. *Trainor v. State*, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011), *trans. denied*. Indiana Appellate Rule 7(B) implements that authority and provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading this court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that

come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Finally, we note the principal role of appellate review is to "leaven the outliers," not achieve the perceived "correct" result in each case. *Id.* at 1225.

## II. Inappropriate Sentence

## A. Waiver

[8] We address first the State's contention that Connor has waived review of his sentence because he did not make a specific argument that the nature of his offense makes his sentence inappropriate, citing *Anderson v. State*, 989 N.E.2d 823 (Ind. Ct. App. 2013), *trans. denied*. *See* Brief of Appellee at 9-10. *Anderson* does state that "[a]n appellant bears the burden of showing both prongs of the inquiry favor revision of her sentence[,]" citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Our reading of *Childress* finds no such statement, however, just a simple declaration that "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." 848 N.E.2d at 1080; *see, e.g., Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013) (citing *Childress* for the proposition that "[t]he appellant bears the burden of demonstrating his sentence is inappropriate").

[9] In fact, our courts have frequently treated the two prongs as separate inquiries to ultimately be balanced in determining whether a sentence is inappropriate. *See, e.g., Eckelbarger v. State*, 51 N.E.3d 169, 170-71 (Ind. 2016) (revising defendant's sentence from thirty-two years to sixteen years upon finding the nature of his offenses—drug offenses facilitated by a State informant—did not

warrant consecutive sentences, without also discussing whether his character warranted revision); *Isom v. State*, 31 N.E.3d 469, 494 (Ind. 2015) (noting "[t]he character of the offender, rather than the nature of the offense, presents [defendant's] strongest support for revision[,]" but ultimately declining to revise the sentence because the nature of the offenses "far outweigh his otherwise favorable character"), *cert. denied*, 136 S. Ct. 1161 (2016); *Rice v. State*, 6 N.E.3d 940, 947 (Ind. 2014) (stating, in declining to revise defendant's sentence, "[w]e are thus not convinced that *either* the nature of the offense *or* the character of the offender warrants a revision") (emphasis added); *Cardwell*, 895 N.E.2d at 1226 (revising defendant's sentence without considering the nature of the defendant's character because "the record contains a number of inconclusive factors on which the trial court made no findings"); *Schaaf v. State*, No. 85A04-1506-CR-796, 2016 WL 2899460, at *3 (Ind. Ct. App. May 18, 2016) (revising a sentence upon finding that although the defendant's criminal history was significant and would make a below-advisory sentence too lenient, the nature of his "relatively minor" offenses rendered his above-advisory sentences too harsh); *Norris v. State*, 27 N.E.3d 333, 336 (Ind. Ct. App. 2015) (acknowledging defendant's criminal history but revising sentence as inappropriate due to "the relatively innocuous nature of this offense"); *Williams v. State*, 891 N.E.2d 621, 633-35 (Ind. Ct. App. 2008) (revising defendant's sentence on the basis of the nature of his offense even though defendant did not make an argument regarding his sentence in light of his character); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007) (revising defendant's sentence "[a]fter due consideration of [his]

minimal criminal history, probation violations, and guilty plea," which are all factors weighing on defendant's character).[3]

[10] In other words, although the rule does state that we may revise a sentence we find to be inappropriate "in light of the nature of the offense *and* the character of the offender," App. R. 7(B) (emphasis added), we view that as a statement that we as the reviewing court must *consider* both of those prongs in our assessment,[4] and not as a requirement that the defendant must necessarily *prove* each of those prongs render his sentence inappropriate. In practice, as illustrated by the cases cited above, we often exercise our review and revise power where only one of the prongs weighs heavily in favor of either affirming or revising the sentence. *See Payton v. State*, 818 N.E.2d 493, 498 (Ind. Ct. App. 2004) ("[I]t is clear that [the defendant's] character falls within the category of the worst offenders. However, we are also obliged to consider the nature of the offenses. In our opinion, the offenses committed, while egregious, are by far not the worst we have reviewed. Therefore, in this category of offenses, we do not find [the defendant's] actions to be the worst we have reviewed and, thus, we deem his aggregate . . . sentence to be inappropriate. Therefore, we revise [the

---

[3] Conversely, we have found an inappropriate sentence argument to be waived when the defendant invokes the rule but sets forth no reasons supporting that claim, *see, e.g.*, *Boyle v. State*, 868 N.E.2d 435, 437 (Ind. 2007), or when the defendant claims to be making a 7(B) argument but instead asserts the trial court erred in its identification or weighing of aggravators and mitigators, *see, e.g.*, *Sandleben v. State*, 29 N.E.3d 126, 135-36 (Ind. Ct. App. 2015), *trans. denied*.

[4] This is not to say that we should consider only one prong or the other, *see* slip op. at 19, but that we must consider both prongs *together*.

defendant's] sentence to reflect the presumptive for each offense . . . ."), *trans. denied.* In short, 7(B) review is a holistic approach, "focus[ing] on the forest . . . rather than the trees . . . ." *Cardwell,* 895 N.E.2d at 1225. This is in line with the acknowledgement in *Childress* that the 2003 amendment to Rule 7 "represented a shift from a prohibition on revising sentences unless certain narrow conditions were met to an authorization to revise sentences when certain broad conditions are satisfied." 848 N.E.2d at 1079 (quotation omitted).

[11] Even the most heinous offense—and no one could dispute with a straight face that every child molesting offense is heinous—comes with an advisory sentence that can be reduced or enhanced within a given range. Although the trial court's reasons for imposing a given sentence within that range can be reviewed for abuse of discretion, the trial court's weighing of those reasons cannot. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007). By arguing only that the nature of his character warrants a lesser sentence, Connor has essentially conceded that if we were reviewing the circumstances of his crime alone, his sentence would be warranted; however, he urges us to give more weight to the nature of his character than to the circumstances of his crime. We believe this is an appropriate acknowledgement of the seriousness of his offense and an acceptable request for exercise of our review and revise power. We therefore do not believe Connor has waived our review of his sentence under Rule 7(B). His burden of persuading us that his sentence is inappropriate has not been

lessened, and, in fact, may be heightened by the need to prove the nature of his character should overcome the admittedly serious nature of his offense.

## B. Rule 7(B) Review

[12] We begin by noting that the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Connor was convicted of criminal deviate conduct, a Class B felony. A Class B felony carries a possible sentence of six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5(a). The victim in this case was Connor's sister and the forced sexual contact occurred multiple times over the course of at least two years. The trial court found two aggravating circumstances—Connor's history of criminal or delinquent behavior and the harm to the victim was significant and greater than required to prove the elements of the offense—and one mitigating circumstance—Connor's mental health condition. The trial court found the aggravating circumstances outweighed the mitigating circumstance and ordered an enhanced sentence of fourteen years, with four years suspended to probation with community corrections placement.

[13] As Connor himself acknowledges, the nature of his offense is serious because "the sexual victimization of a person, particularly a minor, is a heinous act." Amended Appellant's Brief at 8. Connor therefore focuses solely on the nature of his character in contending his sentence is inappropriate, asserting his sentence should be reduced because he is young, had a difficult early childhood,

and later developed behavioral and mental health issues and substance abuse problems. In all respects, this case is tragic. At the time he was sentenced for forcibly engaging in sexual activity with his adoptive sister, Connor was eighteen years old. He was neglected as an infant and left in an orphanage as a toddler. These early childhood traumas adversely affected his life even after he was adopted into a family who supported and tried to assist him, and who, despite his actions, recognize he needs treatment and continue to offer support. *See* Tr. at 13 (Connor's adoptive father testifying at the sentencing hearing that "we love him very much, he's our son, . . . and we still care about his future very much. We are in a difficult position in this case, but still feel that he has a lot of potential in his future"); *id.* at 16 (J.C. testifying at the sentencing hearing that "I don't think he learned to be comforted in his early years. I think that his views on family, authority and trust were formed during this time. Unfortunately he does not seem to understand the assistance that his current family has tried to offer. He has rejected our comfort and treatment that my parents has been [sic] . . . seeking [for him] for a long period of time. He's never really gotten the appropriate kind of help. I hope that he can now receive the help that he needs, I want to see him get better more than I want to see him punished"). Connor reported during the pre-sentence investigation that he struggled to bond with his family and feels detached from them; he has in fact

been diagnosed with reactive attachment disorder.[5]  He has also been diagnosed with bipolar disorder and has attempted suicide three or four times.

[14]  While we acknowledge the serious challenges Connor has faced, we must also acknowledge that he has been provided multiple opportunities to address those challenges and has not fully accepted those opportunities.  Connor's parents have pursued mental health services for him for several years.  He was hospitalized after one suicide attempt and prescribed medication that he was resistant to taking.  He has, however, self-medicated with drugs including marijuana, hydrocodone, Adderall, and on one occasion, heroin.  He has been in counseling for several years with several counselors.  The most recent attempt at counseling lasted approximately one year, but was terminated because Connor did not fully engage in the process and ultimately refused to participate.

[15]  In addition, although Connor's prior criminal history is limited to juvenile adjudications for conversion and leaving home without permission, he was only seventeen when he was arrested on the current charge.  His juvenile adjudications also demonstrate, in part, his disregard for the authority of his parents and his disrespect of the family unit.  We must also note that Connor was charged with a sex crime against another family member, although the

---

[5] Reactive attachment disorder "is a rare but serious condition in which an infant or young child doesn't establish healthy attachments with parents or caregivers."  Mayo Clinic Online, http://www.mayoclinic.org/diseases-conditions/reactive-attachment-disorder/basics/definition/con-20032126 (last visited May 27, 2016).

charge was dismissed as part of the plea agreement in this case. And finally we note that Connor pleaded guilty to using force to compel J.C. and reiterated at the sentencing hearing that force was involved, but reported during the pre-sentence investigation that the sexual contact with J.C. was consensual. This at least reflects a disregard for the victim, and at most, a failure to take full responsibility for the wrongfulness of his conduct.

[16] We agree with the trial court, the victim and her family, and Connor himself that he is in need of rehabilitative and mental health treatment. We also note Connor has not to this point taken advantage of opportunities for such treatment and has instead wandered down a dangerous path. Given the serious nature of his offense and the fact that he has not yet demonstrated a commitment to helping himself overcome the difficult circumstances of his birth, we cannot say that Connor has persuaded us his fourteen-year sentence is inappropriate.

# Conclusion

[17] Connor has not met his burden of persuading us that his fourteen year sentence is inappropriate in light of the nature of his offenses and his character. Accordingly, the sentence is affirmed.

[18] Affirmed.

Crone, J., concurs.

Najam, J., concurs in result with separate opinion.

William A. Connor

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
03A05-1511-CR-1893

**Najam, Judge, concurring in result.**

[19] I concur in the result. I agree that Connor's sentence should be affirmed, but I cannot join in the majority's interpretation of Indiana Appellate Rule 7(B). The majority states that we can review and revise a sentence on appeal when the appellant argues that his sentence is inappropriate under *either* the nature of the offense *or* his character. *See* Slip op. at 6-10. That interpretation is contrary to how Indiana's appellate courts have consistently understood and applied Rule 7(B). And, for this court to address both parts of Rule 7(B) in the absence of an appellant's own cogent argument, this court will have to become an advocate for the appellant, which is not our role. *See, e.g.*, *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003); *see also Ford v. State*, 718 N.E.2d 1104, 1107 n.1 (Ind. 1999) (concluding that the appellant forfeited appellate review of his Rule 7(B) issue for failing to state a cogent argument).

[20] Appellate Rule 7(B) states: "The Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." That language is clear: Rule 7(B) plainly requires, as this court has long acknowledged, "the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of the offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (citing Ind. Appellate Rule 7(B)) (emphasis original to *Williams*); *see also Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013) ("An appellant bears the burden [under Rule 7(B)] of showing both prongs of the inquiry favor revision of her sentence.") (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

[21] The majority asserts that *Childress* does not support that reading of Rule 7(B). Slip op. at 6. To the contrary, *Childress* anticipated and rejected the majority's analysis. In *Childress*, our supreme court reviewed the context and history of Indiana Appellate Rule 7(B). The court explained that, under the prior version of the Rule, "an appellate court needed to find that a trial court's sentence was 'manifestly unreasonable' before it could revise the sentence." *Childress*, 848 N.E.2d at 1079.[6] The court then stated that the current version of the Rule was drafted to permit independent appellate review of sentences "when certain

---

[6] Like the current version of Rule 7(B), the prior version of the Rule included the phrase "the nature of the offense *and* the character of the offender." Ind. Appellate Rule 7(B) (2002) (emphasis added).

broad *conditions* are satisfied." *Id.* (emphasis added). In particular, the court stated:

> In essence[,] rather than a procedural barrier over which a defendant must climb in order to be heard, the Rule articulates a standard of review designed as guidance for appellate courts.

> Of course[,] a defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review. . . .

*Id.* at 1080. In other words, the *Childress* court expressly declared that Rule 7(B) establishes the necessary "conditions"—plural—that an appellant "must persuade the appellate court" have been "satisfied" to meet "this inappropriateness standard of review."[7] *Id.* And those conditions, plainly stated in the Rule, are both the nature of the offense and the character of the offender. App. R. 7(B).

[22] Nonetheless, the majority declares that Rule 7(B) requires only that "we . . . must *consider* both prongs in our assessment" and that it does not require "that the defendant must necessarily *prove* both of those prongs . . . ." Slip op. at 8. The majority's declaration is consistent with only half of *Childress*. That is, the majority recognizes that Rule 7(B) "articulates a standard of review

---

[7] In *Childress*, our supreme court used "conditions" as a synonym for "elements," each of which must be satisfied before this court can exercise its authority under the Rule. *See* Webster's 3d New Int'l Dictionary 473 (2002) (a "condition" is a "prerequisite" or "circumstance that is essential to the . . . occurrence of something else"). Contrary to what the majority's analysis implies, a "condition" is not a "factor."

designed as guidance for appellate courts." *Childress*, 848 N.E.2d at 1080. But the majority disregards our supreme court's further admonition that it is incumbent on the appellant to "persuade the appellate court" that his sentence is inappropriate in light of the two "conditions" articulated in the Rule. *Id.*

[23] Further, the cases relied on by the majority do not declare that the "and" in Rule 7(B) really means "or." In only one instance has the Indiana Supreme Court revised an appellant's sentence even though the appellant made no argument on appeal with respect to his character. *Hamilton v. State*, 955 N.E.2d 723, 726-27 (Ind. 2011). But the supreme court's opinion in *Hamilton* did not analyze Rule 7(B) or disapprove of any case law, such as *Childress*, *Ford*, or *Williams*, and this court has continued to rely on those cases well after *Hamilton*. *E.g.*, *Simmons v. State*, 999 N.E.2d 1005, 1013 (Ind. Ct. App. 2013) (following *Williams* and holding that the appellant's failure to argue both prongs of Rule 7(B) resulted in waiver), *trans. denied*.

[24] Indeed, no subsequent Indiana appellate court decision has relied on *Hamilton* for the proposition that it overrules prior case law or otherwise modifies well-settled Rule 7(B) jurisprudence. Neither did the *Hamilton* court state that it meant to rewrite Indiana Appellate Rule 7(B). Given the frequency with which the bench and the bar encounter Rule 7(B), had our supreme court intended its holding in *Hamilton* to break new ground it would have explained as much. Absent such a declaration or a revised analytical framework, we cannot assume that the *Hamilton* court intended to rewrite Rule 7(B) by adjudication. And it is not our prerogative, as an intermediate appellate court, to rewrite the Rule.

This is not a semantic or grammatical quibble. This is significant. If a court on appeal need only "consider" one or the other conditions of Rule 7(B), it dilutes our standard of review. Appellate revision of a sentence under Rule 7(B) is intended to be an exception reserved for those rare cases in which the defendant can satisfy both conditions. *See, e.g.*, *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). Indeed, the purpose of our review is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). If the defendant were allowed to address only one of those two conditions, his burden would be reduced by half, and, in effect, we would review and revise sentences that are not outliers.

Here, Connor presents no argument on appeal that his sentence should be revised in light of the nature of his offense. Rather, he argues that his sentence is inappropriate only in light of his character. Connor has entirely failed to address a condition of Rule 7(B)—the nature of the offense—required for this court to review and revise his sentence, and it is not our place to make that argument on Connor's behalf or to disregard his failure to make that argument for himself. As such, I conclude that Connor has not met his burden to demonstrate that his sentence satisfies the inappropriateness standard of review, and Connor has forfeited our review of that issue.

Accordingly, I concur only in the result and cannot agree that an appellant no longer carries the burden of persuasion under Indiana Appellate Rule 7(B) to demonstrate that his sentence is inappropriate in accordance with the plain meaning of that Rule. Rather, I would follow *Childress*, *Ford*, *Anderson*, *Simmons*, *Williams*, and the substantial number of similar cases that hold that it

is an appellant's burden to demonstrate that his sentence has met the inappropriateness standard of review as defined in the Rule.[8] As Connor did not argue that his sentence is inappropriate in light of *both* the nature of his offense *and* his character, I would hold that he forfeited our review of his sentence under Indiana Appellate Rule 7(B).

---

[8] Other published opinions that acknowledge this proposition include the following: *Swallow v. State*, 19 N.E.3d 396, 402 n.2 (Ind. Ct. App. 2014), *trans. denied*; *Gil v. State*, 988 N.E.2d 1231, 1237-38 (Ind. Ct. App. 2013); *Mateo v. State*, 981 N.E.2d 59, 74 (Ind. Ct. App. 2012), *trans. denied*; and *Paul v. State*, 971 N.E.2d 172, 177 (Ind. Ct. App. 2012). However, the substantial body of cases in which this issue arises are disposed of by this court as memorandum decisions using a waiver-waiver notwithstanding analysis.