

**FILED**

Sep 07 2018, 9:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrew Kobe
Michael Gene Worden
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles A. Moon, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 7, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-879 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable William C. Menges, Jr., Judge <br><br> Trial Court Cause Nos. <br> 34D01-1707-F4-797 <br> 34D01-1707-F4-860 |

**Najam, Judge.**

## Statement of the Case

[1] In this consolidated appeal, Charles A. Moon, Jr. appeals his sentence

following his guilty plea to dealing in cocaine, as a Level 4 felony, and resisting

law enforcement, as a Level 6 felony. He raises two issues for our review, which we revise and restate as follows:

1.   Whether the trial court erred when it calculated his credit time.

2.   Whether his sentence is inappropriate in light of the nature of the offenses and his character.

[2]   We affirm.

## Facts and Procedural History

[3]   Between April 25 and May 10, 2017, Moon sold cocaine to a confidential informant for the Kokomo Police Department ("KPD") on four separate occasions.[1]   On July 7, the State charged Moon with four counts of dealing in cocaine, all as Level 4 felonies, in Cause Number 34D01-1707-F4-797 ("F4-797"). On that same date, the trial court issued a warrant for Moon's arrest.

[4]   On July 20, KPD officers observed Moon riding a moped. The officers were aware that there was a warrant out for Moon's arrest, and they attempted to stop him. However, Moon did not stop for two blocks. After the officers stopped Moon, they discovered a handgun in the waistband of his pants. The officers arrested Moon. The next day, the State charged Moon with one count of unlawful possession of a firearm by a serious violent felon, as a Level 4

---

[1]   Moon sold the confidential informant cocaine in amounts that ranged from 2.1 grams to 4.6 grams.

felony; one count of resisting law enforcement, as a Level 6 felony; and one count of carrying a handgun without a license, as a Class A misdemeanor, in Cause Number 34D01-1707-F4-860 ("F4-860").

[5] On February 23, 2018, Moon and the State filed a plea agreement with the court that encompassed both cause numbers. Pursuant to that plea agreement, Moon agreed to plead guilty to one count of dealing in cocaine, as a Level 4 felony, in F4-797 and to resisting law enforcement, as a Level 6 felony, in F4-860. The agreement provided that Moon's sentence in F4-797 would be left to the discretion of the trial court; however, the executed portion of his sentence would not exceed ten years. The plea also provided that Moon would be sentenced to a term of two and one-half years, all suspended to supervised probation, in F4-860. In exchange, the State agreed to dismiss the remaining counts in both causes.

[6] On March 22, the trial court held a hearing on Moon's guilty plea. During the hearing, Moon stipulated to only the facts contained within the probable cause affidavit that were sufficient enough to establish a factual basis for his guilty plea. The court accepted Moon's plea and entered judgment of conviction accordingly. Pursuant to the terms of the plea agreement, the trial court sentenced Moon to two and one-half years all suspended to supervised probation in F4-860. As a specific condition of his probation, the trial court ordered Moon to complete the Howard County Drug and Alcohol Program. The court determined that Moon "has no jail time credit served while awaiting trial and disposition in this matter." Appellant's App. Vol. II at 56. The court

then heard evidence concerning Moon's sentence in F4-797. During that portion of the hearing, Moon admitted that had used illegal substances every day since he was thirteen years old. Based on his history of substance-abuse issues, Moon requested that the trial court recommend him for purposeful incarceration.

[7]     At the conclusion of the hearing, the trial court found Moon's criminal history to be a significant aggravating factor. The trial court identified Moon's guilty plea to be a mitigating factor but gave it minimal weight because of the substantial benefit Moon received from the plea. Accordingly, the trial court sentenced Moon to twelve years, with ten years executed and two years suspended to supervised probation in F4-797. Again, as a specific condition of probation, the trial court ordered Moon to complete the Howard County Drug and Alcohol Program. The court gave Moon credit for "245 actual days or 327 credit days served while awaiting disposition in this matter." *Id*. at 64. The trial court ordered the sentences in F4-797 and F4-860 to run consecutively. After the trial court announced its sentence, Moon asked: "Is the court not considering placement in the purposeful incarceration as therapeutic community?" Tr. Vol. II at 24. In response, the court stated that, "[g]iven the firearms charge," it did not think purposeful incarceration was "appropriate." *Id*. This appeal ensued.

# Discussion and Decision

## *Issue One: Credit Time*

[8] Moon first contends that the trial court erred when it calculated his credit time. As our Supreme Court has noted, there are two types of credit that must be calculated: "(1) the credit toward the sentence a prisoner receives for time actually served, and (2) the additional credit a prisoner receives for good behavior and educational attainment." *Purcell v. State*, 721 N.E.2d 220, 222 (Ind. 1999). Credit time is a matter of statutory right and trial courts do not have discretion in awarding or denying such credit. *See Harding v. State*, 27 N.E.3d 330, 331-32 (Ind. Ct. App. 2015). Here, Moon asserts that the trial court erred when it calculated his credit time for the time he actually served and when it calculated his good time credit. We address each argument in turn.

### *Actual Time Served*

[9] Moon contends that the trial court erred when it calculated the number of days he spent in confinement prior to sentencing. Specifically, Moon asserts that he spent 246 days in jail, while the trial court only awarded him credit for 245 days. To support his assertion, Moon states that he "was in jail on July 20, 2017[,] . . . and on March 22, 2018 (bookends), which totals 246 actual days, not 245 actual days." Appellant's Br. at 8. Moon does not explain how he calculated the number of days he spent in jail. But it appears as though Moon included the date of sentencing in his calculation.

[10] However, Indiana Code Section 35-38-3-2(d) (2018) states that the "term of imprisonment begins on the date sentence is imposed[.]" Accordingly, the date the trial court sentenced Moon was the first day of his sentence and, therefore, cannot be included when counting the number of days he actually served prior to sentencing. As such, Moon served 245 days in jail from the date of his arrest up to, but not including, the date of his sentencing. The trial court did not err when it awarded Moon credit for 245 days actually served.

*Good Time Credit*

[11] Moon next asserts that the trial court erred when it calculated his good time credit. Pursuant to Indiana Code Section 35-50-6-4(a)(2), a person who is imprisoned awaiting trial or sentencing for a Level 6 felony or misdemeanor is initially assigned to Class A. A person assigned to Class A earns one day of good time credit for every day the person is imprisoned awaiting trial or sentencing. Ind. Code § 35-50-6-3.1(b). However, a person who is imprisoned awaiting trial or sentencing for a crime other than a Level 6 felony or misdemeanor is initially assigned to Class B. I.C. § 35-50-6-4(b)(2). A person assigned to Class B earns one day of good time credit for every three days the person is confined awaiting trial or sentencing. I.C. § 35-50-6-3.1(c). However, IC 35-50-6-4(h) adds:

> A person imprisoned awaiting trial is initially assigned to a credit class based on the most serious offense with which the person is charged. If all the offenses of which a person is convicted have a higher credit time class than the most serious offense with which the person is charged, the person earns credit time for the time

imprisoned awaiting trial at the credit time class of the most serious offense of which the person was convicted.

Thus, the rate at which a defendant earns good time credit while awaiting trial or sentencing is initially determined by the level of the charge against him, but, if the defendant is actually convicted of a lower-level offense than that charged, the defendant's credit time class is to be based on the conviction, not the charge.

[12] Here, the trial court correctly determined that Moon had spent 245 days in jail while awaiting his guilty plea hearing. The court further correctly determined, based on Moon's conviction for a Level 4 felony and his corresponding assignment to credit Class B, Moon's 82 days of good time credit.

[13] But Moon contends that the trial court erred when it "arbitrarily" chose to calculate his credit time based on the Level 4 felony in F4-797 instead of the Level 6 felony in F4-860. Moon continues that, because of that choice, the trial court "arbitrarily denied Moon credit time of 164 days." Appellant's Br. at 9. In essence, Moon asserts that the trial court should have chosen to calculate his good time credit based on his conviction for the Level 6 felony instead of the Level 4 felony.

[14] However, Moon does not cite any authority, and we find none, to support his contention.[2] Indiana Code Section 35-50-6-4(h) does not state that a trial court

---

[2] Moon simply states, without any analysis or discussion, that the trial court's calculation of credit time based on the Level 4 felony instead of the Level 6 felony is "wrong under *James v. State*, 872 N.E.2d 669, 671

may choose which offense it uses as a basis for calculating credit time. Instead, the statute explicitly states that a person earns credit time pursuant to the credit class to which he is assigned, which, in turn, is based on the most serious offense with which the person is convicted. Here, the most serious offense with which Moon was charged in both cause numbers was a Level 4 felony. Moreover, Moon was arrested in both causes on the same day, he entered one plea agreement for both causes, and the trial court accepted that plea agreement and sentenced him in both causes at one hearing. Following that hearing, Moon's highest level of conviction was his Level 4 felony. We conclude that the trial court did not err when it calculated Moon's good time credit based on that offense.

### Issue Two: Inappropriateness of Sentence

[15] Moon next asserts that his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.

---

(Ind. Ct. App. 2007) and *McAllister v. State*, 913 N.E.2d 778, 782 (Ind. Ct. App. 2009)." Appellant's Br. at 9. But neither of those cases are relevant to the issue or otherwise support Moon's argument.

2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[16] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[17] Moon does not challenge the length of his sentence. Instead, he asserts that his sentence is inappropriate because the trial court declined to recommend him for purposeful incarceration. The place where a sentence is to be served is subject to review under Rule 7(B). *See Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). However, this court has recognized that it is "quite difficult" for a defendant to prevail on a claim that his placement is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). "As a practical matter, trial

courts know the feasibility of alternative placements in particular counties or communities." *Id*. That is, "a trial court is aware of the availability, costs, and entrance requirements of community corrections placements in a specific locale." *Id*. at 343-44. Moreover, because our appellate review is focused not on whether another sentence might be more appropriate, but on whether the sentence imposed is inappropriate, a "defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate." *Id*. at 344.

[18] Here, the record demonstrates that Moon asked the trial court to recommend him for purposeful incarceration, but the trial court did not do so. Instead, the trial court ordered Moon to complete the Howard County Drug and Alcohol Program as a condition of his probation in both cause numbers. Accordingly, the trial court still offered Moon an opportunity to address his substance-abuse issues when he completes the executed portion of his sentence.

[19] Still, Moon contends that, because he is a chemically addicted offender with a "long history of substance abuse" and because the circumstances of the crimes were not "more heinous" than the elements required to prove the charges, we should remand this case and compel the trial court to modify his sentence and recommend him for purposeful incarceration. Appellant's Br. at 12. But we are not convinced that the trial court's imposition of an executed sentence without a recommendation for purposeful incarceration is inappropriate.

[20] This court has previously stated that Rule 7(B) plainly requires "'the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of the offenses and his character.'" *Sanders v. State*, 71 N.E.3d 839, 843 (Ind. Ct. App. 2017) (quoting *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008)) (emphasis original to *Williams*). And while we agree that his offenses were not any more serious than what was needed to prove the charges, Moon has not demonstrated that his sentence is inappropriate in light of his character.

[21] At the time of sentencing, Moon already had a relatively substantial criminal history. As a juvenile, Moon was convicted in Illinois of felony delivery of a controlled substance. As a result of that conviction, Moon spent 36 months on probation. And, as an adult, Moon's criminal history includes one felony conviction in Illinois for unlawful possession of a firearm by a felon, for which Moon spent three years incarcerated, and one felony conviction in Indiana for unlawful delivery of a controlled substance, for which Moon spent seven years in the Indiana Department of Correction. But despite having served a substantial amount of time in confinement in both Indiana and Illinois, Moon again decided to engage in unlawful behavior when he sold cocaine to a confidential informant and when he resisted law enforcement. Moon's refusal to alter his criminal behavior after having been previously incarcerated reflects poorly on his character.

[22] Here, the trial court has provided Moon with an opportunity to address his substance-abuse issues after he completes the executed portion of his sentence. And Moon has not provided compelling evidence depicting his character in a

positive light. As such, Moon has not met his burden of convincing us that his placement in the Department of Correction without a recommendation for purposeful incarceration is inappropriate.[3]

[23] In sum, the trial court did not err when it calculated Moon's credit time, and Moon's sentence is not inappropriate in light of the nature of the offenses and his character. We affirm the trial court's order.

[24] Affirmed.

Pyle, J., concurs.

Crone, J., concurs in part and concurs in result in part with separate opinion.

---

[3] Moon also asserts on appeal that the trial court abused its discretion when it considered the firearms charge when it declined to recommend him for purposeful incarceration. Moon did not plead guilty to that charge, and he did not admit to the facts in the probable cause affidavit that would support that charge. Thus, the trial court considered facts not in the record when it declined to recommend Moon for purposeful incarceration as a result of the firearms charge. We assume for the sake of argument that this was an error. However, the location where a sentence is to be served is not subject to review for abuse of discretion. *See King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Rather, "[t]he location where a sentence is to be served is an appropriate focus of our review and revise authority." *Id*. And, as discussed above, Moon has not convinced us that his sentence is inappropriate in light of the nature of the offenses to which he did plead guilty and his character. Thus, any error the trial court may have committed when it considered the firearms charge was harmless. *See Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007)

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles A. Moon, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | Court of Appeals Case No.<br>18A-CR-879 |

**Crone, Judge, concurring in part and concurring in result in part.**

I agree with my colleagues that the trial court did not err in calculating Moon's credit time. I also agree that Moon has failed to meet his burden of establishing that his sentence is inappropriate in light of the nature of the offenses and his character under Indiana Appellate Rule 7(B).

But I respectfully disagree with my colleagues' statement that Rule 7(B) "plainly requires 'the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of the offenses and his character.'" Slip op. at 11 (quoting *Sanders*, 71 N.E.3d at 843, and *Williams*, 891 N.E.2d at 633). In

*Connor v. State*, 58 N.E.3d 215 (Ind. Ct. App. 2016), Judge Robb and I took the position that

> although the rule does state that we may revise a sentence we find to be inappropriate "in light of the nature of the offense *and* the character of the offender," we view that as a statement that we as the reviewing court must *consider* both of those prongs in our assessment, and not as a requirement that the defendant must necessarily *prove* each of those prongs render his sentence inappropriate.

*Id*. at 219 (footnote omitted) (emphases in *Connor*) (quoting Ind. Appellate Rule 7(B)). This is in line with our supreme court's statement in *Cardwell* that we should review sentences in their entirety and not overlook the forest by focusing on the trees. 895 N.E.2d at 1225. Judge Najam expressed his disagreement with this viewpoint in a separate opinion concurring in the result. Perhaps someday our supreme court will weigh in on this issue and settle the dispute once and for all.