## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 07 2019, 7:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Bruce W. Graham<br>Lafayette, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>J.T. Whitehead<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chaz Colin Kruger,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 7, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1144<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Steven P. Meyer,<br>Judge<br><br>Trial Court Cause No.<br>79D02-1608-F4-33 |

**Sharpnack, Senior Judge.**

# Statement of the Case

Chaz Kruger appeals the sentence imposed after his guilty plea to burglary, a Level 4 felony,[1] residential entry, a Level 6 felony,[2] and theft, a Class A misdemeanor[3] and his conviction of attempted residential entry as a Level 6 felony.[4] He contends that the trial court abused its discretion at sentencing and that his sentence is inappropriate. We affirm.

# Issues

Kruger raises the following issues for review:

> 1. Whether the trial court abused its discretion by finding certain aggravating circumstances;
>
> 2. Whether the trial court abused its discretion by imposing consecutive sentences; and
>
> 3. Whether his sentence is inappropriate.

# Facts and Procedural History

Julie Radtke's home and the home of Tammy Halsema are located on the same cul-de-sac, across the street from each other. The home where Kruger lived at

---

[1] Ind. Code § 35-43-2-1(1) (2014).

[2] Ind. Code § 35-43-2-1.5 (2014).

[3] Ind. Code § 35-43-4-2(a) (2014).

[4] Ind. Code § 35-41-5-1 (2014) (attempt); I.C. § 35-43-2-1.5 (residential entry).

the time he committed the offenses is located next to the Halsema residence. The Halsema residence has security cameras mounted to the outside of the home. One of the security cameras faces the Kruger residence.

[4] On the afternoon of February 18, 2016, Deputy Rush of the Tippecanoe County Sheriff's Department was dispatched to Radtke's home. When he arrived, Radtke told him that she left her home at 11:00 a.m. Upon returning at 2:00 p.m., she noticed that her front door was ajar, and a front window screen had been cut. She asked her neighbor Isaiah Halsema, Tammy's son, to accompany her as she entered her residence. Radtke discovered that two computer gaming systems, a flat screen television, and loose change from a jar were missing.

[5] While Deputy Rush spoke with Radtke, Isaiah told the deputy that he had security camera videos from the previous day of Kruger attempting to break into his house. Deputy Rush went over to the Halsema residence and saw that several window screens had been cut. He eventually viewed the security camera videos from February 17 and 18, 2016.

[6] The security video from the evening of February 17th showed Kruger attempting to gain entry into the Halsema residence. He appeared to check the front door and attempted to open windows located on the side of the house. Kruger also is depicted in the backyard, looking through a window. The footage indicated that Kruger moved the security cameras several times to alter the views of the Halsema residence and conceal his actions.

[7] The security video from February 18th,[5] taken by the camera facing the Kruger residence, showed Kruger return to his residence around 1:03 p.m., leave his residence at 1:07 p.m. with a backpack, and then walk out of camera view in the direction of the Radtke residence. Approximately thirty minutes later, an unknown vehicle is seen driving into the cul-de-sac, past the Radtke residence, and then turning around and pulling up to Kruger's home. Kruger is seen exiting the vehicle with the backpack and opening the garage door. The vehicle then pulled into Kruger's garage. The vehicle later pulled out of Kruger's garage and left the cul-de-sac but returned "a couple more times." App. Vol. II, p. 70. When the vehicle returned around 2:00 p.m., Kruger is seen exiting the vehicle, entering his residence for a few minutes, and then reentering the vehicle and leaving his home.

[8] During the investigation of the incidents, law enforcement officers interviewed witnesses who claimed Kruger admitted he was obtaining money by breaking into houses and that he was bragging about breaking into the Radtke home. Other witnesses stated that they purchased a television from Kruger that had the serial number scratched off. The television was later identified as the one taken from the Radtke home.

[9] Kruger was charged with Count I burglary, a Level 4 felony; Count II residential entry, a Level 6 felony; and Count III theft, a Class A misdemeanor,

_____

[5] The DVD containing the February 18, 2016 security camera videos was not included in the record on appeal, but the footage is described in the record.

for the incident that occurred at the Radtke residence. He was charged with Count IV attempted burglary, a Level 4 felony, and Count V attempted residential entry, a Level 6 felony, for the incident occurring at the Halsema residence. Kruger filed a motion to sever counts IV and V, which the trial court denied.

[10] Prior to trial, on February 12, 2018, Kruger pleaded guilty to burglary, residential entry, and theft. On the following day, February 13, 2018, a jury trial was held on the remaining counts. The jury found Kruger not guilty of attempted burglary but guilty of attempted residential entry.

[11] At sentencing, the trial court found that the aggravating factors outweighed the mitigating factors and sentenced Kruger to the Indiana Department of Correction (IDOC) as follows: ten years for Level 4 felony burglary, one year for Class A misdemeanor theft, and two years for Level 6 felony attempted residential entry. The trial court merged the residential entry conviction with the burglary conviction and ordered the sentence for burglary to run concurrently with the theft sentence and consecutively to the attempted residential entry sentence, for a total sentence of twelve years. The trial court then ordered Kruger to serve ten years at the IDOC, with the last year to be served through community corrections and two years of the sentence suspended to supervised probation. Kruger now appeals.

# Discussion and Decision

## 1. Abuse of Discretion

[12] Kruger first argues that the trial court abused its discretion when it sentenced him. Sentencing decisions are within the sound discretion of the trial court and reviewed only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in sentencing by failing to enter a sentencing statement, entering a sentencing statement that explains reasons for imposing a sentence which the record does not support, omitting reasons that are clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490-91.

[13] Kruger contends that the trial court abused its discretion at sentencing by 1) finding certain aggravating circumstances, and 2) not articulating reasons for imposing consecutive sentences. We address each contention in turn.

### A. Aggravating Circumstances

[14] Kruger first challenges the trial court's finding that the seriousness of the offense was an aggravating circumstance. He contends that the court failed to detail why this offense was more serious than any other burglary. To the contrary, however, the trial court did explain why the seriousness of the offense was an

aggravating circumstance, stating that the "seriousness of this offense overall is an aggravating factor and the harms, the harm that was created. You, you violated the trust of your neighbors. You're running around the neighborhood in the cul-de-sac peeking in people's homes, peeking in the windows, scaring 'em half to death and then breaking into their houses to steal things." Tr. Vol. 3, p. 18. As such, the trial court did not abuse its discretion in finding the seriousness of the offense to be an aggravating circumstance.

[15] Kruger next challenges the trial court's finding that the repetitive nature of the theft offense was an aggravating circumstance. Kruger argues that "one prior theft conviction does not establish a pattern," and that "this aggravating circumstance is nothing more than a reiteration of the fact that [he] had a prior criminal history." Appellant's Br. p. 16. However, Kruger's criminal history establishes that in a prior case from 2015, he was charged with (among other offenses) three counts of misdemeanor theft and one count of misdemeanor conspiracy to commit theft. He was eventually convicted of two counts of misdemeanor theft. While that case was pending, Kruger was charged in a separate case with misdemeanor theft,[6] and Kruger also committed the offenses in the instant case, which included theft. The trial court did not abuse its discretion in finding the repetitive nature of the theft offense to be an aggravating circumstance.

---

[6] The case was later dismissed.

Kruger also takes issue with the trial court's finding that he demonstrated a likelihood to reoffend was an aggravating circumstance. According to Kruger, this is no longer a proper aggravator because "[e]ssentially, this is a restatement of the aggravating circumstance of 'need for correctional [sic] or rehabilitation that can best be provided by commitment to a penal facility' which was removed by our legislature as a statutory aggravator." *Id.*

The Indiana Supreme Court has held that absent a jury determination or an admission by the defendant, a judicial conclusion that a defendant is likely to reoffend cannot serve as an aggravating circumstance separate from the defendant's prior convictions. *Williams v. State*, 838 N.E.2d 1019, 1021 (Ind. 2005). Rather, such a statement is more properly characterized as a legitimate observation about the weight to be given to the prior convictions aggravator. *Id. Williams*, however, was based upon the presumptive sentencing scheme, not the advisory scheme applicable in this case, so there is some question as to whether it still applies. *See, e.g.*, *McMahon v. State*, 856 N.E.2d 743, 751 n.8 (Ind. Ct. App. 2006) (observing that, although criminal history and fact of unsuccessful attempts at rehabilitation could not be used as separate aggravators under presumptive sentencing scheme, claim of error on this ground is not available to defendants sentenced under advisory sentencing scheme).

Even assuming the trial court might have abused its discretion by treating Kruger's likelihood to reoffend as a separate aggravating circumstance, it is unnecessary to remand for resentencing because we are convinced the trial

court would have imposed the same sentence even without this aggravator. *See Edrington v. State*, 909 N.E.2d 1093, 1101 (Ind. Ct. App. 2009) (observing that it is proper to affirm sentence where an improper aggravator is considered, if we have "confidence the trial court would have imposed the same sentence" regardless), *trans. denied*. Six proper aggravators remain: Kruger's criminal history, violation of probation, violation of bond, the seriousness of the offense, attempts to cover up the crime, and the repetitive nature of the offense. A single aggravator is sufficient to support an enhanced sentence. *See Trusley v. State*, 829 N.E.2d 923, 927 (Ind. 2005). In light of these aggravators, we find no abuse of discretion in the trial court's sentencing of Kruger.

## B. Consecutive Sentences

[19] Kruger next argues that the trial court erred in ordering his attempted residential entry sentence to be served consecutively to his burglary sentence. Kruger maintains that the trial court failed to provide an adequate explanation for imposing consecutive sentences.

[20] Trial courts are permitted to impose consecutive sentences if warranted by the aggravating circumstances. *Monroe v. State*, 886 N.E.2d 578, 579 (Ind. 2008). In doing so, however, a trial court must articulate, explain, and evaluate the aggravating circumstances that support the sentence. *Id.* at 580. Where the trial court's sentencing statement lacks specificity with regard to an explanation for imposition of consecutive sentencing, remand for resentencing is not required where the rationale for consecutive sentences is apparent on the face of the record. *Lewis v. State*, 31 N.E.3d 539, 543 (Ind. Ct. App. 2015).

[21]     Here, the trial court did not explain with specificity why it imposed consecutive sentences; however, the rationale for doing so is apparent on the face of the record. There were two sets of victims, and it is well settled that "injury to multiple victims" supports the imposition of consecutive sentences. *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001). Furthermore, in its sentencing order, the trial court identified multiple aggravating circumstances:

> [Kruger's] juvenile and adult criminal history; he violated his probation [in another case] by committing the offense in this cause; he violated his bond; the seriousness of the offense; he attempted to cover up his crime; the repetitive nature of the offense; he demonstrates a likelihood to re-offend, especially considering his social media postings pending trial and his conduct while incarcerated after trial; [and] prior rehabilitation attempts have failed.

App. Vol. II, p. 14. The court explained the aggravating circumstances at sentencing, in relevant part, as follows:

> On the aggravating side, there's first the criminal history, starting with a juvenile, when you were [a juvenile], back in 2013, . . . Then we get to your adult history, . . . As an adult, you have a prior misdemeanor for theft, twice in 2016, and you have a prior felony conviction for assisting a criminal in 2016. You committed these bonds [sic] while you were out on bond in [the] 1506-F4 case and you have the pending cases I referred to up in Knox City Court. So, your criminal history is an aggravator. You violated rules of probation and while on bond. I think the State is right. The seriousness of this offense overall is an aggravating factor and the harms, the harm that was created. You, you violated the trust of your neighbors. You're running around the neighborhood in the cul-de-sac peeking in people's

> homes, peeking in the windows, scaring 'em half to death and then breaking into their houses to steal things. Another aggravator is you attempt to cover up the crime by lying to the person you just apologized to, to, to the Radtke girl. You lied directly to her and you lied directly to [her father], when you were given an opportunity to come clean. The repetitive nature of your offenses, theft, is troublesome to the Court.

Tr. Vol. 3, pp. 16-19.

After identifying all of the aggravating and mitigating circumstances, the trial court stated:

> Based on that, as I said, I think an aggravated sentence is appropriate.
>
> * * * * *
>
> Gonna order that Count one and Count three run concurrent for ten years and then on the attempted residential entry, . . . I'm gonna impose a sentence of two years. I'm gonna order that the residential, the attempted residential entry, I'm sorry, should run consecutive to Count one for a total sentence of twelve years.

*Id*. at 20. Based upon the foregoing, we cannot say the court abused its discretion in imposing consecutive sentences.

## 2. Inappropriate Sentence

[22] Kruger next challenges the appropriateness of his twelve-year sentence. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the

sentence is inappropriate in light of the nature of the offense and the character of the offender. When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[23] "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In addition, as we assess the nature of the offense and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Kruger has the burden to show that his sentence is inappropriate. *See Anglemyer*, 868 N.E.2d at 494.

[24]     Kruger concedes that he has a criminal history but argues that his sentence is inappropriate because his criminal history does not justify the sentence. He maintains that there are substantial mitigating circumstances that favor a reduced sentence, specifically:

> Kruger graduated from Harrison High School in 2015. He was involved in the GLASS Program (special education), [sic] and participated in the extracurricular activities of soccer and wrestling. Kruger had never been suspended or expelled from high school. (App. Vol. II 159). The Pre-Sentence Investigation also plainly indicates that Kruger had an ongoing and substantial work history. His work history demonstrates near continuous work beginning in 2012 through 2015. Kruger was employed at the time of his arrest for the instant charges. (App. Vol. II 160).

> Kruger also reported being diagnosed with ADHD while in the fifth grade, and Bi-Polar Disorder in 2014. (App. Vol. II 160).

> As noted earlier, Kruger had an IRAS score indicating only a moderate risk to reoffend. (App. Vol. II 161). Additionally – the court received numerous letters from family and friends indicating the good character of Kruger. (App. Vol. II 184-192). Kruger's employer sent a letter detailing excellent attendance, a good attitude, and being an asset to his employer. (App. Vol II 187). Pastor Penny stated Kruger was attending church with his family and was taking steps to better himself. (App. Vol II 184). A co-athlete from high school gave Kruger high marks for persistence, kindness, and loyalty. (App. Vol II 191).

> Community Corrections evaluated Kruger and concluded that he was appropriate for placement within the Community Corrections program in Tippecanoe County. (App. Vol. II 181).

Appellant's Br. pp. 19-20.

[25] However, Kruger's argument focuses on his character and does not refer to anything that might bear on the nature of his offense. "[R]evision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). By failing to present a cogent argument regarding the inappropriateness of his sentence in light of the nature of his offense, Kruger has waived his request for this court to review his sentence under Appellate Rule 7(B). *See* App. R. 46(A)(8)(a); *Williams*, 891 N.E.2d at 633.[7]

[26] Waiver notwithstanding, we find no basis to revise Kruger's sentence. As to the nature of Kruger's offense, he admitted that he broke into the home of the Radtkes, who had been his neighbors since he was a child,[8] by cutting a screen and entering through a window. Once inside, Kruger forced his way into a locked bedroom door, damaging the door. He stole from the home a jar

---

[7] *Cf. Moon v. State*, 110 N.E.3d 1156, 1163-64 (Ind. Ct. App. 2018) (Crone, J., dissenting) ("But I respectfully disagree with my colleagues' statement that Rule 7(B) 'plainly requires "the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of the offenses and his character."' [(quoting *Sanders v. State*, 71 N.E.3d 839, 843 (Ind. Ct. App. 2017), *trans. denied*], and *Williams*, 891 N.E.2d at 633)). In *Connor v. State*, 58 N.E.3d 215 (Ind. Ct. App. 2016), Judge Robb and I took the position that 'although the rule does state that we may revise a sentence we find to be inappropriate "in light of the nature of the offense *and* the character of the offender," we view that as a statement that we as the reviewing court must *consider* both of those prongs in our assessment, and not as a requirement that the defendant must necessarily *prove* each of those prongs render his sentence inappropriate.' *Id.* at 219 (footnote omitted) (emphases in *Connor*) (quoting Ind. Appellate Rule 7(B)). This is in line with our supreme court's statement in *Cardwell* that we should review sentences in their entirety and not overlook the forest by focusing on the trees. 895 N.E.2d at 1225.")

[8] He was nineteen years old at the time he committed the offenses.

containing loose change that totaled over $100.00, a 32" flat screen television, and two computer gaming systems. He sold the stolen television to an unwitting buyer. The day before he broke and entered the Radtke residence, Kruger attempted to break into the Halsema home by cutting the window screens and trying to open the windows. The Halsemas had been Kruger's next-door neighbors for years.

[27] As to Kruger's character, we note that he pleaded guilty to the offenses against the Radtkes, and that he was only nineteen years old at the time he committed the offenses. However, at nineteen, Kruger already had a lengthy history of criminal or delinquent behavior. As a juvenile, he was placed in a program of informal adjustment after he was charged with possession of marijuana and possession of paraphernalia as Class A misdemeanors. He violated informal adjustment and was terminated from the program after sending text messages to other juveniles describing buying and selling marijuana, making threats to juveniles, claiming to be part of a gang, stating that he was taking detox pills, and intentionally diluting his urine samples. Shortly thereafter, he was adjudicated a delinquent child for what would be the misdemeanor offense of possession of marijuana. He was arrested for being a runaway and was released from home detention. He violated the rules of intensive supervision numerous times for being in possession of a cell phone and being in unapproved areas on an unapproved pass from school. He was fired from his place of employment for threatening a co-worker. He was terminated from probation after testing positive for marijuana.

[28]    Kruger's adult record began in May 2015, with charges for misdemeanor theft and illegal possession of an alcoholic beverage. The case was dismissed. However, approximately one month later, Kruger was charged with assisting a criminal as a Level 6 felony, and conspiracy to commit burglary, conspiracy to commit theft, and theft – as misdemeanors. He was convicted in April 2016 of the Level 6 felony assisting a criminal count and two counts of misdemeanor theft. He was sentenced to three years executed in the IDOC, with the final two years in community corrections. While that case was pending, and while on bond, Kruger was charged with misdemeanor possession of marijuana for an alleged offense committed in Starke County, and he also committed the offenses against the Halsemas and the Radtkes.

[29]    Kruger has had many opportunities to conform his behavior to the requirements of the law but, instead, has persisted in a pattern of criminal activity and has refused to grasp the seriousness of his errant conduct. While awaiting trial for the instant case, and after being released on his own recognizance, Kruger posted pictures to social media that depicted attempts to sell a firearm and drugs and contained messages taunting the police. While in jail awaiting sentencing, Kruger had a friend arrange a three-way telephone call that included Kruger and another inmate, during which Kruger and the inmate discussed witnesses from Kruger's trial. During a separately recorded jail phone call, Kruger discussed buying and selling drugs.

[30] For all of these reasons, we conclude that Kruger has failed to demonstrate that his aggregate twelve-year sentence is inappropriate in light of the nature of the offense or his character.

# Conclusion

[31] The trial court did not abuse its discretion in sentencing Kruger, and his twelve-year aggregate sentence is not inappropriate in light of the nature of his offense and his character.  For the reasons stated above, the judgment of the trial court is affirmed.

[32] Affirmed.

Bailey, J., and Crone, J., concur.