## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 16 2019, 6:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy P. Payne
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew Michaloski
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Burshone Conner,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

January 16, 2019

Court of Appeals Case No.
18A-CR-1569

Appeal from the Monroe Circuit
Court

The Honorable Mary Ellen
Diekhoff, Judge

Trial Court Cause No.
53C05-1504-F5-374

**May, Judge.**

[1] Burshone Conner appeals her six-year sentence for Level 5 felony dealing in cocaine.[1] Conner argues her sentence is inappropriate. Within that argument Conner alleges prejudicial trial court bias because the trial court judge "had formed an opinion of the outcome before the sentencing occurred and that the judge had antagonistic beliefs toward [Conner]." (Br. of Appellant at 10.) After carefully reviewing the record, we affirm.

## Facts and Procedural History

[2] In February 2015, Conner sold what she believed to be cocaine to a police informant. For that act, the State charged Conner with one count of Level 5 felony dealing in cocaine under cause number 53C05-1504-F5-374 ("Cause 374"). At the same time, but based on other actions, the State charged Conner with Level 6 felony theft[2] and Level 6 felony forgery[3] under a different cause number, 53C05-1504-F6-375 ("Cause 375").[4] In March 2016, Conner entered a guilty plea for both cause numbers. Judge Mary Ellen Diekhoff delayed sentencing and allowed Conner to leave Monroe County to attend a residential rehabilitation program at the YWCA in South Bend, Indiana.

---

[1] Ind. Code § 35-48-4-1 (2014).

[2] Ind. Code § 35-43-4-2 (2014).

[3] Ind. Code § 35-43-5-2 (2014).

[4] The record provided to us contains only the charging information for Cause 375. (*See* App. Vol. 2 at 11-14 (Information, Appearance, Probable Cause Affidavit, and an Order for a warrant all pertaining to the theft and forgery charges).) Thus, we relied on the Chronological Case Summary to present the facts and procedural history of this appealed case, Cause 374.

[3]    While enrolled at the YWCA and for a time period afterward when Conner was securing housing and employment, Judge Diekhoff repeatedly continued Conner's sentencing hearing in light of Conner's positive progress. During this time, Conner also attended hearings in a Child in Need of Services ("CHINS") case in Monroe County. Judge Diekhoff attempted to schedule hearings in this matter at the same time as Conner's CHINS hearings so that Conner could limit her trips to Monroe County.

[4]    On May 24, 2018, the trial court held the sentencing hearing. Conner had missed two prior scheduled sentencing hearings and had a new criminal charge in Marion County for false informing. At this hearing, Conner admitted having had a relapse between February 2018 and April 2018. Conner had not informed the court of this but had, eventually, decided to attempt treatment on her own. Conner stated she was nervous about coming to court. Conner testified:

> I did not want the Judge to see me because the guy that I was seeing in south [sic] Bend had beat me up and I had a black eye and bruises all over my body. I was more ashamed. I was hurt and I was more afraid because I had let her and myself down.

(Tr. Vol. 2 at 38.)

[5]     During her sentencing statement, Judge Diekhoff noted she had worked with Conner over many years through Monroe County's Problem Solving Court[5] and now in this matter. Judge Diekhoff asked Conner why Conner did not trust her enough to keep her informed after all the trust Judge Diekhoff had placed in Conner. On hearing Conner's response that she was "scared," (*id*. at 48), Judge Diekhoff stated her belief that "nothing has changed" in Conner's behavior since they first met in Problem Solving Court. (*Id*.)

[6]     Judge Diekhoff noted the leniency the Court had shown to Conner during this case: sentencing was delayed, Conner was allowed to leave the county to attend a residential rehabilitation program, and hearings had been scheduled to coincide with the CHINS hearings. Nevertheless, Conner had still failed to appear for two hearings, had gotten a traffic ticket for which she had failed to appear in another county, had acquired another criminal charge in Marion County, had been in a house in Bloomington wherein drugs were found, and had relapsed back into drug use. Especially disturbing to Judge Diekhoff was Conner's failure to inform the court of these facts.

[7]     Judge Diekhoff then "apologize[d] to the State of Indiana for what ended up making [sic] a bad decision." (*Id*. at 56.) Judge Diekhoff stated:

---

[5] Monroe County's Problem Solving Court Program "provide[s] an opportunity and services to selected offenders by addressing criminogenic risk factors through supervision and treatment." https://www.co.monroe.in.us/department/division.php?structureid=129 (last visited December 20, 2018).

So the Court . . . is out of options.  I have no places [sic] else to put her.  No place else to send her to treatment; no place else where I can trust her to be somewhere.  Because I cannot even trust her to be in this Court when she was supposed to have been.  Although she managed to find her way to Monroe County without coming to Court.  To say that the Court is highly disappointed would be an understatement.  The Court truly believes that Ms. Conner was completely capable and was actually desiring to change her life and do something differently than she had done.  Based upon all the factors which the Court has now indicated the Court now agrees with the State of Indiana and at this time the only appropriate and the only sentenced [sic] that the Court is left with is to sentence Ms. Conner to the Department of Corrections [sic].  The Court would note again for the purposes of the record the Court attempted to avoid it by allowing Ms. Conner to go outside of this county to seek treatment and be able to address the issues.  The Court is now convinced that Ms. Conner's issues are more criminal in nature more so than they are any other type of issue.  Having now exhausted all available treatment; all available options; all available everything [the Court proceeds to sentencing.]

(*Id*. at 56-57.)

[8]     Conner requested she be given credit time for inpatient treatment at the YWCA.  Judge Diekhoff originally said, "No not this time."  (*Id*. at 52.) However, after noting the aggravators and mitigators, Judge Diekhoff granted Conner's request for the inpatient treatment credit time and applied all credit time to the sentence in Cause 375.  For the Level 5 felony dealing in cocaine in Cause 374, which is under review in this appeal, Judge Diekhoff sentenced Conner to six years in the Indiana Department of Correction.

# Discussion and Decision

[9]     Conner argues the nature of her offense and evidence of her good character do not warrant the maximum sentence she was given. Further, Conner asserts the "trial court failed to reach its sentencing conclusion in a fair, calculated manner [and] did not sentence [Conner] based on the merits of this case but on the basis of a personal antagonism toward [Conner]." (Br. of Appellant at 6.)

[10]    "The law presumes that a judge is unbiased and unprejudiced. . . . A defendant asserting judicial bias must show the trial judge's actions and demeanor showed partiality and prejudiced the case." *Woods v. State*, 98 N.E.3d 656, 664 (Ind. Ct. App. 2018) (internal citations omitted), *trans. denied*. "[I]ntemperate comments may not necessarily demonstrate bias." *Id*. A trial court judge is permitted to form opinions based on the facts of the case "occurring in the course of the current proceedings, or of prior proceedings[.]" *Liteky v. United States*, 510 U.S. 540, 555 (1994). Statements of "impatience, dissatisfaction, annoyance, and even anger" do not establish bias. *Id*. at 555-56.

[11]    Although Judge Diekhoff's statements may have reflected her impatience with this situation or her frustration with Conner's failure to take advantage of the opportunities the court provided, that impatience or frustration, by itself, does not equate to judicial bias. *See Woods*, 98 N.E.3d at 664 (judicial bias consists of partiality and prejudice to the case). Furthermore, Judge Diekhoff's "apology" to the State, (*see* Tr. Vol. II at 56), appears to have been an expression of Judge Diekhoff's regret that she had allowed Conner so much leeway and delayed the

sentencing for two years when Conner's more recent actions demonstrated that investment of time had not paid off. If that statement could be considered a statement of dissatisfaction or annoyance, it seems Judge Diekhoff developed that opinion based on the facts of current and past proceedings in her court, which is not impermissible. *See Liteky*, 510 U.S. at 555-6 (judges may form opinions based on proceedings, and dissatisfaction and annoyance do not establish bias). Although none of Judge Diekhoff's statements "necessarily demonstrate bias," *see Woods*, 98 N.E.3d at 664, we review the appropriateness of Conner's sentence to ensure no prejudice occurred.

[12] Under Ind. Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (2007). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). We defer to the trial court's decision, and our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012), *reh'g denied*. Conner, as the appellant, bears the burden of demonstrating her sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[13] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d

at 494. The sentencing range for a Level 5 felony is "a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6(b) (2014). The trial court sentenced Conner to six years for the Level 5 felony. Thus, Conner received the maximum sentence for her offense.

[14] Conner sold what she believed to be cocaine to a confidential informant. While we acknowledge the fact that this means the drugs were not introduced to the general populace, Conner did not know the buyer was an informant when she committed the crime. Her behavior indicates her willingness to sell illegal drugs and her ability to find drugs to sell. Nevertheless, there is nothing more egregious about Conner's crime than the standard dealing offense. Thus, we turn to Conner's character.

[15] Conner argues that although the trial court "acknowledged the addiction, mental health concerns, abusive relationships, and the completion of some treatment, [it] did not consider other mitigating traits in Conner's character." (Appellant's Br. at 9.) This argument is unavailing.

[16] As mitigators, Conner points to her battle with addiction, her "successful[]" completion of treatment, her lifetime of abusive relationships, her mental health concerns, her mentoring of other women at the YWCA, her two years of sobriety, her going back to treatment "of her own volition," her employment, and her ability to procure housing. (*Id.*) While the trial court may not have mentioned all of these mitigators in the same words, it commented extensively

on Conner's recent history. (*See* Tr. Vol. 2 at 45-57 (trial court's statements about Conner's actions and behaviors and its subsequent decision on sentencing).) Nevertheless, the trial court is not obliged to give mitigators the same weight the defendant would, *Flickner v. State*, 908 N.E.2d 270, 273 (Ind. Ct. App. 2009), and we may not reweigh the aggravators and mitigators presented. *Anglemyer*, 868 N.E.2d at 491.

[17] When considering the character of the offender, another relevant fact is the defendant's criminal history. *Johnson*, 986 N.E.2d at 857. The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Conner acknowledges her criminal history but contends that her completion of Problem Solving Court and the rehabilitation program offered through the South Bend YWCA, together with her guilty plea, show "her acceptance of responsibility, [a] sincere effort to mend her ways, and her lack of criminal thinking." (Br. of Appellant at 6.)

[18] Conner's criminal history includes convictions of misdemeanor conversion, felony maintaining a common nuisance, two counts of felony forgery, and felony fraud on a financial institution. She had also been charged with felony forgery, felony fraud, felony theft, and felony identity deception, but those charges were dismissed due to her successful completion of Problem Solving Court. Conner has been placed on probation five times and was found in violation thereof four times.

[19]     The trial court noted Conner's "extensive criminal history" (Tr. Vol. 2 at 52), dating back to 1991. It noted she was involved in the Problem Solving Court and successfully completed the program, but then she reoffended. The court enumerated the various programs and opportunities to which Conner had been given access, including the Problem Solving Court and the out-of-town YMCA program, and it noted Conner nevertheless continued to commit crimes, including the commission of additional crimes while awaiting sentencing for this crime. The trial court concluded it was left with no option except to place Conner in the Department of Correction.

[20]     Conner's criminal history demonstrates a pattern of behavior indicative of a failure to take responsibility for her actions, and it does not lead us to see as inappropriate the trial court's sentence of six years. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (continuing to commit crimes after frequent contacts with the judicial system is a poor reflection on one's character); *see also Connor v. State*, 58 N.E.3d 215, 221 (Ind. Ct. App. 2016) (continued crimes indicate a failure to take full responsibility for one's actions).

[21]     Based on our review of Conner's character and offense, Connor has not demonstrated Judge Diekhoff's statements at the sentencing hearing prejudiced Conner's sentence. *See, e.g.*, *Danner v. State*, 900 N.E.2d 9, 13 (Ind. Ct. App. 2008) (a maximum sentence is not inappropriate when the defendant has shown a "complete disregard for the law" together with an extensive criminal history); *see also Lamar v. State*, 915 N.E.2d 193, 196 (Ind. Ct. App. 2009) (maximum

sentence is not inappropriate, even if nature of offense is not particularly egregious, if the character of the offender is poor).

# Conclusion

[22] Because Conner's six-year sentence is not inappropriate in light of her character, especially her criminal history and her failure to take advantage of repeated opportunities provided by the trial court, Conner has not demonstrated Judge Diekhoff was biased against her. Accordingly, we affirm.

[23] Affirmed.

Baker, J., and Tavitas, J., concur.