## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.

 

FILED
Sep 10 2024, 8:58 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Steven F. Searing,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

September 10, 2024

Court of Appeals Case No.
24A-CR-721

Appeal from the Clay Circuit Court

The Honorable Joseph D. Trout, Judge

Trial Court Cause No.
11C01-1903-F6-250

**Memorandum Decision by Chief Judge Altice**
Judge Mathias concurs.
Judge Bailey concurs with separate opinion.

**Altice, Chief Judge.**

## Case Summary

[1] Steven Searing pled guilty to two counts of Level 6 felony theft, and the trial court sentenced him to one and one-half years of incarceration at the Indiana Department of Correction (DOC) and ordered him to pay $6,300 in restitution. Searing appeals, asserting that his sentence was inappropriate in light of the nature of the offense and his character.

[2] We affirm.

## Facts & Procedural History

[3] In April 2018, Searing, then age fifty-nine, contacted Tammy Thomas on Facebook after he saw her in a television news report describing that she survived being shot twenty-two times by her husband. Searing told Thomas he was a millionaire, did not want anyone else to hurt her, and would take care of her. They met in person after she got out of the hospital and began a dating relationship. One morning in late July 2018, Thomas went to the Clay County Sheriff's Department and reported that Searing had stolen money and jewelry from her.

[4] On May 19, 2019, the State charged Searing with two counts of Level 6 felony theft, Count I alleged theft of $6,300 in cash and Count II alleged theft of jewelry. Over the next several years, Searing obtained a number of continuances and failed to appear on multiple occasions, including for trial

settings, resulting in the issuance of bench warrants. In July 2023, the parties filed a proposed plea agreement with the court and, in late August 2023, Searing and the State appeared for a change of plea hearing. The terms of the plea agreement were that Searing would plead guilty to Count I, the State would dismiss Count II, and he would be sentenced to the DOC for 545 days, with all but 34 days suspended to probation, and he would pay $12,000 in restitution to Thomas.

[5]    Thomas testified at the hearing in opposition to the plea agreement. Summarized, she testified that Searing offered to help her handle the purchase of a certain piece of real estate, and, for that purpose, she gave him a $6,300 cashier's check, along with other cash, but she later learned that he used the money to purchase a motorcycle. He took rings from her without her knowledge or permission, including her deceased husband's wedding ring. Thomas stated that, while she was in surgery, he took her credit cards, racking up $20,000 on them, and took all the cash in the house. She maintained that she would "never see" any of the restitution money provided in the plea agreement as Searing does not work, was removed from disability, and does not own real property. *Transcript* at 51. Thomas testified that Searing deceived her, shows no remorse, and "keeps doing this to more and more women." *Id*. at 50. The trial court rejected the proposed plea and set the matter for trial.

[6]    The parties appeared for a pretrial hearing in November 2023, and Searing requested that the trial date be continued as he would be having a heart procedure around the scheduled trial date. Although overruling the State's

objection to a continuance, the court granted the State's request that Searing provide proof to the court of having the heart procedure.

[7] The parties appeared for the scheduled bench trial on January 10, 2024, and Searing changed his plea in open court, pleading guilty to two counts of Level 6 felony theft without a plea agreement. When the court requested proof of the heart procedure, Searing's counsel indicated he would provide it following the hearing. In discussing the matter, Searing stated to the court that, since the last court date in November, he had undergone two stent procedures to his heart and was scheduled for a heart surgery later in January to repair a leaky valve at St. Vincent's Heart Center (St. Vincent's).

[8] At some point prior to the March 6, 2024 sentencing hearing, Searing provided two documents to the court neither of which was from St. Vincent's: (1) an undated EKG report and (2) a medical report, signed by an M.D. and dated November 16, 2023, concerning an orthopedic injury to Searing's knee. At the start of the sentencing hearing, the trial court again asked Searing and his counsel about the previously-ordered proof of the heart stents and heart surgery. None was provided.

[9] Searing, who was by then remarried to someone, testified at the sentencing hearing that he no longer was on medical leave from his employer, International Electrical Systems (IES), where had he resumed working a couple of months prior, and that he was also currently working full-time at Walmart since September 2023. He claimed that, if he were ordered to serve any days of

incarceration, he would lose his anticipated $8,200/month IES pension, which he anticipated he would start receiving at age sixty-seven. Searing testified as to ongoing medical issues with his knees and with his heart, stating that he underwent a stent procedure in January 2024 and was taking twelve medications to address a leaky heart valve but that surgery was likely. Searing testified that incarceration would impact his ability to meet his medical needs.

[10] He agreed that he desired to pay $6,300 in restitution to Thomas for using the $6,300 to buy a motorcycle for himself, which, by some means not clear from Searing's testimony, was subsequently "signed [] over" to a woman named Bobby Delvar, who Searing testified he was dating when he and Thomas "were hanging out" and who later got a protective order against him. *Transcript* at 107. He acknowledged that Thomas also gave him $6,000 in cash to use for the real estate purchase but claimed that the seller wanted more for the property so "we spent it on things, [Thomas] and I," and he could not remember how much of that money he kept. *Id.* at 109.

[11] Searing stated that if the court would order him to probation, he could borrow the $6,300 through his IES credit union but that, if he was sentenced to a period of incarceration, he would not be able to access the credit union and, thus, would be unable to pay Thomas. He told the court that his 401(k) was drained due to medical bills.

[12] Searing acknowledged having a criminal history that included convictions for check deception, felony theft, and conversion. He also acknowledged that he

was currently on probation out of another Indiana county for conversion. In explaining why he chose to plead guilty to the current offense, Searing testified that "this has been going on for five years" and he was "tired of putting [his wife] through this" and desired to "move on with [his] life." *Id*. at 96.

[13] Thomas testified about her initial online contact from Searing that resulted in a brief romantic relationship, which ended after she started asking for receipts and "figured out what was going on with [her] money." *Id*. at 114. Thomas described additional instances of Searing taking her money and not using it as agreed or instructed, where he deceived her into buying items for him such as a truck and a riding lawnmower. Thomas stated that she did not believe Searing was working and described him as "a user" who "does this to women all the time." *Id*. at 116, 128. Thomas's opinion was that Searing "needs go to jail." *Id*. at 121.

[14] At the March 6, 2024 sentencing hearing, the trial court found as mitigators that Searing pled guilty and had a work history but "question[ed] the veracity" of Searing's claimed health issues and entirely rejected remorse as a mitigator. *Id*. at 135-36. The court found as aggravating Searing's criminal record, noting that many of his offenses were crimes of dishonesty. The court sentenced Searing to one and one-half years on each count, with the sentences to run concurrently, and, per the parties' stipulation, ordered him to pay $6,300 of restitution to Thomas. Searing now appeals.

## Discussion & Decision

[15] Searing asks us to revise his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. We apply a "holistic approach" to our 7(B) review. *Lane v. State*, 232 N.E.3d 119, 127 (Ind. 2024) (quoting *Connor v. State*, 58 N.E.3d 215, 219 (Ind. Ct. App. 2016)). In determining whether a sentence is inappropriate, we "'must consider' both factors, but the defendant need not 'necessarily prove' that the sentence is inappropriate on both counts." *Id.* at 126 (quoting *Connor*, 58 N.E.3d at 219). As we assess the nature of the offense and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). The appellate court's role under Rule 7(B) is to "leaven the outliers," and "we reserve our 7(B) authority for exceptional cases." *Faith v. State*, 131 N.E.3d 158, 159-60 (Ind. 2019) (quotation omitted).

[16] Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Ultimately, whether a sentence should be deemed inappropriate "turns on our sense of the

culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Searing bears the burden to show that his sentence is inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1045 (Ind. Ct. App. 2016).

[17] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). Searing was convicted of two Level 6 felonies, the sentencing range for which is between six months and two and a half years, with the advisory being one year, and a fine up to $10,000.00. Ind. Code § 35-50-2-7. The trial court sentenced Searing to concurrent sentences of one and one-half years in the DOC for each count of Level 6 felony theft and, by agreement of the parties, ordered him to pay $6,300 in restitution. Searing argues "a fully-executed sentence above the advisory range was not warranted" and asks us to revise his sentence to probation only. *Appellant's Brief* at 15.

[18] As to the nature of the offense, Searing reached out to Thomas on Facebook at a time when he knew she was recovering from a traumatizing and life-threatening incident with her former husband. Searing falsely represented to Thomas that he was a millionaire and told her he "would like to take care of [her]"; instead, he stole from her. *Transcript* at 114. When she started asking for proof of how he spent her money, he "disappeared" at first, then told her he had terminal cancer and to "leave him alone because he wanted to die peacefully." *Id.* at 124. We agree with the State that Searing exploited Thomas's vulnerable state to develop a relationship with her in order to gain access to her

money and valuables. Searing has failed to provide compelling evidence portraying the nature of the offense in a positive light.

[19] In considering the character of the offender, we engage in a broad consideration of his qualities. *Madden v. State*, 162 N.E.3d 549, 564 (Ind. Ct. App. 2021). A defendant's "life and conduct" are illustrative of his character. *Id*. One relevant factor to consider is a defendant's criminal history. *Denham v. State*, 142 N.E.3d 514, 517 (Ind. Ct. App. 2020), *trans. denied*. Searing has a criminal history beginning in 1996 and spanning over two decades, with at least ten charges for theft or conversion. He was convicted of five felonies and five misdemeanors. As the trial court observed, many involved crimes of dishonesty. Further, he was on probation out of another Indiana county at the time of sentencing. Thomas indicated that, as all this unfolded, she spoke to Delvar, as well as other women with whom Searing had a past, and learned that he has a pattern of manipulating women, especially ones that are vulnerable. Such conduct reflects poorly on his character.

[20] As the State observed, Searing's conduct during the court proceedings also reflects poorly on his character. He failed to appear several times. And he obtained continuances based on claims of needed medical care, yet never provided requested documentation to the court.

[21] In seeking revision of his sentence, Searing suggests that he expressed remorse. However, neither Searing's testimony at the sentencing hearing, nor his written description of the offense in his presentence investigation report – "I dated a

woman, after I broke up with her, she said I stole from her. But I didn't most of the money was spent on her." – reflect remorse. *Appendix* at 49. In sum, we discern no substantial virtuous traits or persistent examples of good character that would warrant revision of Searing's sentence.

[22] Searing has not met his burden to demonstrate that his sentence is inappropriate in light of the nature of the offense or his character.

[23] Judgment affirmed.

Mathias, J., concurs.

Bailey, J., concurs with separate opinion.

ATTORNEY FOR APPELLANT
Janet Lynn Thompson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Indiana Attorney General

Steven J. Hosler
Deputy Attorney General

Timothy M. Hamilton
Certified Legal Intern
Indianapolis, Indiana

**Bailey, Judge, concurring.**

[24]    Given the egregious nature of the offenses and what is known of the extremely poor character of the offender, I agree with the majority that Searing's sentence should not be revised to the advisory, as he requests. That said, my vote is accompanied by reluctance. If anything, this sentence is inappropriately lenient.

[25]    I find it very unfortunate that the State did not ask for a harsher sentence. Considering Searing's history of numerous crimes of dishonesty, his apparent dishonesty with the trial court in disclosing his medical history, the extreme harm to the victim, and Searing's total lack of effort to pay any restitution by the time of sentencing (by, perhaps, selling some of the assets he stole), I would have readily voted to affirm a maximum sentence for Searing. That said, I acknowledge that the State does not ask us to revise Searing's sentence upward, and therefore, we will not do so. *See, e.g., Akard v. State*, 937 N.E.2d 811 (Ind. 2010).

> Although the defendant's raising of sentence reasonableness on appeal authorizes appellate consideration of whether the assigned sentence is inappropriately stern or lenient, we decline to increase the sentence here, particularly in the context of the State's request for no greater sentence at trial and its assertion on appeal that such is an appropriate sentence. These are strong indicators that the trial court sentence is not inappropriately lenient.

*Id.* at 814.

[26]     Given our constraints on appeal, I concur.