## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2020, 10:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan M. Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey Lee Murray,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 17, 2020<br><br>Court of Appeals Case No.<br>20A-CR-543<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Samuel L. Cappas, Judge<br><br>Trial Court Cause No.<br>45G04-1808-F5-152 |

**May, Judge.**

[1] Jeffrey Lee Murray challenges his two-year-and-three-month sentence following his conviction of Level 6 felony domestic battery.[1] Murray argues his placement is inappropriate based on his character. We affirm.

## Facts and Procedural History

[2] Murray and C.M. were in a romantic relationship for the past fifteen years and have two children together, aged nine and three. On July 13, 2018, at approximately 6:30 p.m., Murray and C.M. were visiting friends in Gary, Indiana. Murray and C.M. began arguing, and Murray punched C.M. in the head, knocking her unconscious. Gary Police Officers responded to a report of an unconscious female and, upon arrival, found C.M. lying unresponsive on the living room sofa with visible swelling on one side of her face. Paramedics transported C.M. to Methodist Northlake Hospital for treatment. The police officers questioned three women at the scene regarding the events leading up to C.M.'s injuries. The women reported that C.M. had gotten into a verbal and physical altercation with Murray outside of the apartment and that Murray responded by punching C.M. in the head in the presence of their two children, who were playing in the nearby playground at the time.[2]

---

[1] Ind. Code § 35-42-2-1.3(b)(3).

[2] Based on the probable cause affidavit, it would seem Murray fled the scene after the first attack.

[3] C.M. was discharged from the hospital and returned to the apartment complex that same day. She was talking to Kassandra Blodgett in the parking lot of the apartment complex at approximately 11:20 p.m. when Murray approached them. Murray began arguing with C.M. and punched C.M., who fell to the ground unresponsive. Blodgett had Murray assist her with carrying C.M. into Blodgett's apartment, and Blodgett attempted to call 911. The dispatcher noted that, during the call, Murray was in the apartment with C.M. and Blodgett, and he kept arguing with Blodgett and grabbing for her phone. Murray finally managed to disconnect the emergency call and fled the scene. Gary Police Officers responded to the new report of a battered woman at the same apartment complex, and paramedics again transported C.M. to the hospital for treatment of swelling and scrapes to her forehead, swelling and scrapes to her left eye, and swelling to her lips. Blodgett also noted that C.M. was complaining of chest and face pain. At the time of the attack, C.M. was nine weeks pregnant. A CT scan during the second hospital visit revealed an "apparent acute traumatic subarachnoid hemorrhage." (App. Vol. II at 16.)

[4] On August 24, 2018, the State charged Murray with two counts of Level 5 felony domestic battery resulting in serious bodily injury,[3] one count of Level 6 felony domestic battery resulting in moderate bodily injury, one count of Level 6 felony domestic battery in the presence of a child less than sixteen years of

[3] Ind. Code § 35-42-2-1.3(c)(1).

age,[4] and one count of Class A misdemeanor interference with and prevention of using 911 emergency services.[5]  On December 5, 2019, Murray entered into a stipulated plea agreement whereby Murray agreed to plead guilty to one count of Level 6 felony domestic battery causing moderate bodily injury and the State agreed to dismiss all other charges.  Following a sentencing hearing on February 7, 2020, the trial court imposed a twenty-seven-month sentence and ordered Murray to serve two years executed in Lake County Jail and three months in Marion County Community Corrections.[6]

# Discussion and Decision

[5]     We will reverse a sentence as inappropriate only if we determine Murray's sentence is inappropriate in light of both the nature of his offense and his character.  *See* Ind. Appellate Rule 7(B) ("The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.").  The nature of offense analysis compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008), while

---

[4] Ind. Code § 35-42-2-1.3(b)(2).

[5] Ind. Code § 35-45-2-5(1).

[6] Murray lives in Indianapolis, so the trial court allowed him to serve his time on Community Corrections where he lives instead of in Lake County, where the crime occurred.

the character of the offender analysis permits for a broader consideration of a defendant's character. *Douglas v. State,* 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).

[6] Ultimately, our determination about appropriateness "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224. We do not look to see if another sentence is more appropriate, but rather we determine if the sentence imposed is inappropriate. *Barker v. State,* 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied.* The defendant ultimately bears the burden of demonstrating the inappropriateness of the sentence. *Patterson v. State,* 909 N.E.2d 1058, 1063 (Ind. Ct. App. 2009).

[7] Murray does not object to the length of his sentence, but challenges the trial court's decision to order a portion of his sentence executed in Lake County Jail rather than in a community corrections program.[7] Although "the place that a

---

[7] As part of his defense, Murray primarily argues that he is entitled to revision of his sentence due to an inappropriate evaluation of his now improved character and urges us to base our review of his sentence solely on his character. This court has previously determined that, under the guidelines of Appellate Rule 7(B), a defendant must demonstrate inappropriateness of a sentence with respect to both character and the nature of the offense, or the issue was waived. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). In our discretion, we may choose to review the sentence waiver notwithstanding. *Id.* However, in *Connor v. State*, 58 N.E.3d 215, 219 (Ind. Ct. App. 2016), another panel of our court determined that an appellant is not required to establish both prongs of the inappropriateness analysis. Instead, that panel said, "although the rule does state that we may revise a sentence we find to be inappropriate "in light of the nature of the offense *and* the character of the offender . . . we view that as a statement that we as the reviewing court must *consider* both of those prongs in our assessment, and not as a requirement that the defendant must necessarily *prove* each of those prongs render his sentence inappropriate." *Id.* Judge Najam's concurring opinion, however, recognized that in permitting an appellant to choose *either* prong, the court unwillingly becomes an advocate for the appellant, which is incongruent with our designated role and dilutes our standard of review. *Id.* at

sentence is to be served is an appropriate focus for application of our review and revise authority," *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007), it is nonetheless "quite difficult for a defendant to prevail on a claim that the placement of his or her sentence is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). As we explained in *Fonner*: "As a practical matter, trial courts know the feasibility of alternative placements in particular counties or communities. For example, a trial court is aware of the availability, costs, and entrance requirements of community corrections placements in a specific locale." *Id.* at 343-4.

[8] In sentencing Murray, the trial court found ten aggravating factors, which significantly outweighed the five mitigating circumstances found. One of the factors considered by the trial court, which points to the severity of Murray's offense, was that the harm suffered by C.M. was far greater than that necessary to prove Murray guilty of a single count of Level 6 felony domestic battery resulting in moderate bodily injury. During the first instance of battery, Murray struck C.M. so hard she was rendered unconscious, which necessitated transportation to the nearby hospital. Then, upon seeing C.M. after she returned from the hospital that same evening, Murray punched her again,

222-223. Despite our court's varied decisions, we recognize that each panel of this court is not bound by coequal decisions of other panels, as Indiana law does not recognize horizontal *stare decisis*. *Smith v. State*, 21 N.E.3d 121, 126 (Ind. Ct. App. 2014). We agree with the concurrence in *Connor* and require that the appellant demonstrate both prongs of the inappropriateness analysis.

which induced visible facial swelling and chest pain in C.M. C.M. was transported to the hospital a second time for her injuries, and during this hospitalization a CT scan revealed that C.M. suffered a substantial head injury. We recognize that Murray did not display any "restraint, regard, and lack of brutality" that would portray "in a positive light the nature of the offense," *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015), thus Murray has failed to demonstrate that the nature of his offense requires placement solely in community corrections.

[9] The bulk of Murray's argument rests in his attempt to persuade us that his changed character and efforts at rehabilitation merit re-evaluation of where he serves his sentence. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Although the extent to which a defendant's criminal history may be used to guide an appropriate sentence "varies based on the gravity, nature, and number of prior offenses in relation to the current offense," repeated contacts with the criminal justice system reflect poorly on the defendant's character, because such contacts suggest the defendant "has not been deterred [from further criminal behavior] even after having been subjected to the police authority of the State." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005).

[10] The pre-sentence investigation report (PSI) detailed Murray's criminal history, which began in 2003 with juvenile adjudications of misdemeanor battery and

misdemeanor resisting law enforcement; Murray was given alternative sentence placements of house-arrest and probation, but yet failed both. Murray has since acquired two misdemeanors, one in 2017 for invasion of privacy and the other in 2018 for operating a vehicle while intoxicated; for his OWI conviction Murray was granted 364 days of probation with conditions, but a petition to revoke his probation is pending. Murray also has a total of three felony convictions on his criminal record. In 2008 Murray pled guilty to robbery and was sentenced to five years in the Department of Correction; although four of those years were suspended to probation, a petition to revoke probation was granted in 2011 and Murray was subsequently discharged unsatisfactorily. In 2011 Murray pled guilty to burglary and was sentenced to ten years in the Department of Correction, with four years to be served as an alternative sentence. Finally, in 2014, Murray pled guilty for failure to return to lawful detention and was sentenced to two years in the Department of Correction.

[11]     Notwithstanding his criminal history, Murray has failed to demonstrate that his attempts at rehabilitation and counseling left a significant and lasting impression that would deter him from future offenses. Although Murray argues his placement is improper because he and C.M. underwent individual and family counseling and separate anger management services prior to his sentencing hearing, we cannot overlook Murray's history of recidivism and his failure to alter his behavior after receiving alternative placements in the past. Additionally, those services were by the court as part of its dispositional order

in the Child in Need of Services case, which was a result of the domestic battery incidents. Despite the fact that, on multiple occasions, Murray was granted placement in community corrections or probation, all such placements have ended with revocation or unsatisfactory completion meriting a return to the Department of Correction, and Murray was not deterred from committing additional offenses.

[12] Nor are we convinced that Murray's placement in Lake County Jail rather than community corrections would result in hardship for him or his family. *See Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999) ("incarcerated people have children, so just having children does not amount to an undue hardship meriting a lesser sentence," particularly when defendant was not ordered to pay child support). During the trial court's sentencing hearing, C.M. testified that neither she nor Murray have guardianship of their two children because they are going through a Department of Child Services case, the children are currently staying with relatives, and Murray has not been ordered to pay any child support.

[13] Despite Murray's initiative to seek rehabilitation and his contention that incarceration would result in hardship, his criminal history demonstrates that probation and alternative sentencing programs do not work well to deter him from crime. *See Fonner*, 876 N.E.2d at 344 (placement in the Department of Correction is not inappropriate when prior, less restrictive efforts at rehabilitation have been unsuccessful). Murray has been placed on probation

multiple times and has had probation revoked several times. Most telling is that Murray was on probation when he committed the present batteries against C.M. on the same day. *See Childress v. State*, 848 N.E.2d 1073, 1081 (Ind. 2006) (defendant's sentence did not merit alteration after defendant pled guilty to committing additional offenses while he was on bond for resisting law enforcement), *and see Zavala v. State*, 138 N.E.3d 291, 301 (Ind. Ct. App. 2019) (defendant's sentence was deemed appropriate due to his continued antisocial behavior demonstrated by three misdemeanor convictions for battery and domestic battery and a felony conviction for failure to return to lawful detention; additionally, the defendant was on probation at the time he committed the offense at issue). Murray's lengthy criminal record and inability to follow rules of probation reflect poorly on his character and demonstrate a pattern of violent and destructive behavior that has occurred consistently over the course of Murray's adult life.

# Conclusion

[14] We conclude the trial court's decision to order Murray to serve two years in Lake County Jail and three months in Marion County Community Corrections was not inappropriate. Accordingly, we affirm.

Affirmed.

Robb, J., concurs.

Vaidik, J., concurs in result without opinion.